UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA        )
                                )
          v.                    )   CRIMINAL NO. 15-CR-10258(DJC)
                                )
                                )
BRIAN SMIGIELSKI                )


DEFENDANT'S MOTION FOR A NON-GUIDELINE SENTENCE
& SENTENCING MEMORANDUM

INTRODUCTION

Pursuant to a plea agreement under Rule 11(c)(1)(C), Brian Smigielski pled guilty on September 29, 2015 to a one-count information charging him with conspiracy to defraud the United States in violation of 18 U.S.C. § 371.   The Probation Department has determined his guideline sentencing range is 24 - 30 months as his total offense level is a 17 and his criminal history category is a I.   PSR ¶ 67.   Mr. Smigielski requests that the court accept the joint recommendation of the parties, as set out in the plea agreement, and impose a  sentence of one year probation along with an appropriate fine, which is a sentence that is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).   United States v. Booker, 543 U.S. 220, 125 S.Ct. 738  (2005).   Under the circumstances of this case, a sentence

of one year probation along with a fine is reasonable, sufficient and not greater than necessary.

FACTS

I.  The Offense (Facts are taken from both the PSR and the Information)

Between 2009 and May 2011, the Federal Bureau of Investigation ("FBI") and the BPD were involved in an investigation of a drug-trafficking organization known as the Academy Homes Street Gang ("AHSG") and its members, including Owens Brown and Lamar Axell, who operated around the Academy Homes Housing Development in the Roxbury section of Boston. Up until October 2009, Smigielski was the lead detective conducting surveillance, pursuing leads, and performing other investigative work of Owens Brown and other AHSG associates. Smigielski was taken off the AHSG investigation by Lieutenant-Detective Robert Harrington, who informed him that SIU and the FBI would be taking the AHSG investigation from gang Unit. In November 2009, Lt. Harrington learned of Smigielski's displeasure, and in response, ordered that Smigielski refrain from further surveillance of Owens Brown and to document any contact with Brown if such contact occurred. On or about January 29, 2010, Smigielski was with Officer Mel Steele, Owens Brown and Lamar Axell at the bar Daisy Buchanan's in downtown Boston. During this meeting, Smigielski warned Brown that the "Feds" were

looking at him. Steele also warned Axell that the "Feds" were on Brown and that Axell should avoid Brown.

On September 27, 2010 Mel Steele, at the request of Lamarr Axell ran a License plate belonging to an unmarked police surveillance vehicle that had been used to conduct surveillance Owens Brown. After Steele ran that plate, Owens Brown avoided the Eggleston Square area. Officer Steele admitted to running the license plate at Axell's direction.

On December 30, 2010 Brown called Smigielski's cell phone from an unmonitored land line (at his ex-girlfriend Chante Carney's apartment) and spoke with Smigielski for approximately 12 minutes. Smigielski never disclosed this call to his BPD superiors.

On or about April 11, 2011, Owens Brown was stopped by BPD officers working on the AHSG investigation. During the stop, Brown asked the BPD officers whether they knew "Steele" or "Smiddy." Within days after the car stop, Brown met with Smigielski to inquire about the car stop. During this meeting in Eggleston Square, Smigielski informed Brown that based upon his experience; it was likely that Brown was being physically identified by law enforcement in preparation for Brown's imminent arrest. The FBI and BPD arrested Brown in May of 2011.

## II. Mr. Smigielski's History

Mr. Smigielski grew up in the Hyde Park section of Boston with his parents and an older sister.  His father was a Boston Firefighter and his mother was a stay at home mom.  Smigielski graduated from Catholic Memorial High School in 1990 and then attended Boston University and then Northeastern.  He eventually took enough classes at Curry College to obtain the equivalent credits of an Associate's Degree in 1995.

Smigielski lives in Norton Massachusetts with his wife Dana and their three children; ages 13, 7, and 5.  Smigielski also has a daughter, 14, from a prior relationship who lives with the mother and her husband.  Smigielski pays weekly child support and remains involved in Kayla's life.  Also as evidence by the letters of support from Mr. Smigielski's friends, co-workers and neighbors, he is very active in his children's lives.

Smigielski's wife Dana has recently returned to work to help out with the family's current financial situation.  She works at Women and Infants Hospital in Rhode Island as a clinician helping women with post partum issues

Brian originally was employed with the Boston Police Department as a Cadet in The Boston Police Cadet Program in 1995, working at the Police Academy and District D-4. Smigielski became a Boston Police Office in 1999 after

graduating from the Boston Police Academy.  He was first assigned as a patrolman in District D-4 and then District  B-2 before joining the Youth Violence Strike Force (Gang Unit) in 2005 where he was promoted to the rank of Detective in 2007.

During his career as a Boston Police Officer, Smigielski has received various awards;

- BPD Thomas Taylor "Meritorious Service Award" in 2002
- BPD Louis Metaxas Medal of Honor in 2008
- BPD Wayne Anderson Medal of Honor in 2014
- Four Commissioners Commendations 2002, 2004, 2007, and 2014
- George Hannah Valor Award in 2009 given by the Commonwealth of Massachusetts
- Two American Legion Medals of Valor in 2009
- Two Awards of Excellence from the Boston Police Detectives Benevolent Society.

Smigielski has also been injured three times while performing his duties as a Police Officer. In 2010 Smigielski fractured his shoulder making an arrest and was out on injured leave for several months.  In 2011 he suffered his first, work related back injury requiring surgery. And then in 2014, Smigielski reinjured his back making an arrest and required spinal fusion surgery in 2015 from which he is still recovering.

ARGUMENT

Under the Supreme Court's decision in United States v. Booker, 125 S.Ct. 738 (2005) a court must look to 18 U.S.C. § 3553(a), and impose a sentence that is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in § 3553(a)(2). Booker 125 S.Ct. at 764-65. In imposing sentence, the Court must consider all of the factors set forth in § 3553(a)(1)-(7). The sentencing guidelines are no longer binding on the court. Id. The Supreme Court has reaffirmed that, following Booker, all guideline sentencing ranges are merely advisory. Kimbrough v. United States, 128 S.Ct. 558, 564 (2007). While 18 U.S.C. § 3553(a) requires a court to give "respectful consideration" to the guidelines, Booker and its progeny "permit[] the court to tailor the sentence in light of other [§ 3553(a)] concerns as well." Id. The advisory guideline scheme even permits sentencing courts to "vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." Id. Indeed, a sentencing court "may not presume that the Guidelines range is reasonable" but instead must, using the factors set forth in § 3553(a), "make an individualized assessment based on the facts presented." Gall v. United States, 128 S.Ct. 586, 596 (2007). The advisory range is, of course, only the beginning of an individualized analysis

concerning the fair and appropriate sentence for Smigielski. The Court must determine "whether other factors," including those listed in 18 U.S.C. § 3553(a), "warrant an ultimate sentence above or below the guideline range." United States v. Rodriguez, 731 F .3d 20, 26 (l st Cir. 2013). "'[A] sentencing judge should engage in a ... holistic inquiry,' by considering 'a tapestry of factors, through which runs the thread of [the] overarching principle' of parsimony." United States v. Russell, 537 F.3d 6, 11 (1st Cir. 2008) (quoting United States v. Rodriguez, 527 F.3d 221, 228 (1st Cir. 2008)). By law, the ultimate disposition must be "sufficient, but not greater than necessary" to advance the statutory purposes of sentencing. Here, the nature and circumstances of the offense along with the § 3553(a) factors warrant a sentence of one year probation along proposed fine.

**THE §3553(a) FACTORS WARRANT THE IMPOSITION OF A PROBATIONARY SENTENCE.**

1.  Nature and circumstances of the offense and the history and characteristics of the defendant (§ 3553(a)(1)).

Mr. Smigielski as detailed above and in the PSR, was a hard working decorated investigator with the Boston Police Department. It was his initial investigation and work which was turned over to the FBI and the BPD Special Investigations Unit. As is stated in the PSR, Mr. Smigielski's injured pride led to

his actions as detailed in the Information. PSR ¶ 6.   He received nothing for himself in return for his indiscretions.

2.  The need for the sentence to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" (§ 3553(a)(2)(A)).

A sentence of probation along with a fine is sufficient, severe and adequate to reflect the seriousness of the offense. Mr. Smigielski appreciates the seriousness of his actions and has taken responsibility for them as evidenced by his prompt plea.  Moreover, as the Supreme Court noted in *Gall*, probation and/or supervised release also amount to a "substantial restriction of freedom." 128 S.Ct. at 595. The Court further stated that "3553(a) directs the judge to consider sentences other than imprisonment".  Id. at 602.

Conversely, a "sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Id*. at 599.

3.  The need for the sentence "to afford adequate deterrence to criminal conduct" (§ 3553(a)(2)(B)).

A sentence of probation along with a fine provides a strong deterrent.  Mr. Smigielski career as a police officer, the only real job he has performed in his adult life, is over.  Along with the loss of the job he loved he is also losing his pension.

8

For him this is an even more devastating loss financially as he is currently out of work as a result of a job related injury. Nevertheless, he will lose his disability pay once his plea is accepted and he is sentenced. He regrets his participation in this offense and realizes that the behavior he exhibited which led to these charges has brought him before the court in a very different and unfamiliar role to him.

4.  The need for the sentence "to protect the public from further crimes of the defendant" (§ 3553(a)(2)(c).

As stated above Mr. Smigielski's crime is not consistent with his history. As the court can glean from the PSR, and the letters of support, Mr. Smigielski led a very exemplary and law abiding life with strong family support. The peculiar circumstances giving rise to this offense are highly unlikely to repeat themselves and Mr. Smigielski poses no conceivable threat to public safety. His public exposure and humiliation also provide a stark example to deter others who might contemplate similar misconduct.

5.  The "kinds of sentences available."(§ 3553(a)(3)).

The proposed one year probation along with a fine is available to the court.

6.  The "kinds of sentence and sentencing range" established under the Guidelines and "any pertinent policy statement"(§ 3553(a)(4) & (5)).

The probation department has determined Mr. Smigielski's guideline sentencing range to be 24 -30 months. However, under the circumstances of this case, a sentence within the guidelines is "greater than necessary" to serve the objectives of sentencing.

7.   The "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" (§ 3553(a)(6)).

As discussed above, on April 30, 2015, the defendant in a related case, Mel Steele, was sentenced to one year of probation. A sentence sending Smigielski to a federal prison would create, rather than avoid, an unwarranted disparity with the sentence imposed on Steele. Such disparate sentences, prison for Smigielski but probation for Steele, is not warranted by the evidence of their respective roles in the charged conspiracy. As set out in the Information and as detailed in the PSR, Steele, while not charged as a co-defendant was certainly a co-conspirator, and was at least as culpable an offender as Smigielski.

A sentence of one year probation along with a fine takes into account this factor as well as the factors discussed above.

<u>CONCLUSION</u>

For all the foregoing reasons, a probationary term is sufficient, but not greater than necessary, to serve the

purposes of sentencing. It reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. Smigielski's incarceration is unnecessary to serve the goals of deterrence and protecting the public from further crimes of the defendant, as Smigielski is determined that there shall be no more.

> Brian Smigielski
> By his attorneys,
>
>
> /s/John F. Coffey
> John F. Coffey
> 30 Eastbrook Road
> Suite 201
> Dedham, MA  02026
> (781) 326-0128
> BOB # 548019
>
>
> /s/ Edward J. McNelley
> Edward J. McNelley
> 101 Tremont Street
> Suite 700
> Boston, MA 02108
> (617) 755-3401

Dated: January/21/2016

<u>CERTIFICATE OF SERVICE</u>

I, John F. Coffey, hereby certify that this document and attachments filed through the ECF system will be sent electronically to the registered participants, Assistant U.S. Dustin Chao and Andrew McGrath of the U.S. Probation Department on January 21, 2016.

> /s/ John F. Coffey
> John F. Coffey